**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No.:

J.R. VIDEOS INTERNATIONAL, INC.,

    Plaintiff,

vs.

AMAZON.COM, INC.,

    Defendant.
_____/

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff, JR VIDEOS INTERNATIONAL INC. ("Plaintiff") by and through its undersigned counsel, hereby sues Defendant, AMAZON.COM, INC. ("Amazon" or "Defendant"), as follows:

**PARTIES, JURISDICTION, AND VENUE**

1)    This Court is an action pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); 28 U.S.C. § 1338(b) (action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).

2)    Plaintiff is a Florida corporation having a principal place of business at the address 999 Brickell Bay Drive, Apt. 1908, Miami, Florida 33131. Plaintiff is a small minority-owned business.

3)    Amazon is a Delaware corporation with its principal place of business at 1200 12th Ave. South, Ste. 1200, Seattle, Washington 98144. Upon information and belief, this Court has personal jurisdiction over Amazon because Amazon has engaged in acts or omissions within this judicial district causing injury, has engaged in acts or omissions outside of this

judicial district causing injury within the district; or has otherwise made, has established contacts with this judicial district sufficient to permit the exercise of personal jurisdiction, or has had continuous and systematic contacts with this forum as a result of business regularly conducted within the this judicial district via sales over the World Wide Web and Internet.

4) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b) because the acts of infringement and other wrongful conduct, and a substantial part of the events or omissions giving rise to the claims, occurred in the Southern District of Florida.

### GENERAL ALLEGATIONS

### The Amazon Marketplace

5) The issues in this case pertain to Amazon's role in marketing and effectuating the sale of products offered by third-party vendors on the Amazon.com platform.[1]

6) Amazon is the world's most valuable retail company.[2] Its website is an online marketplace where Amazon retails its own products as well as those of more than one million third-party vendors. These third-party vendors decide which products to sell, the means of shipping, and product pricing. For its part, Amazon lists the products on the Amazon.com marketplace, collects order information from consumers, and processes payments. In exchange for these services, Amazon collects fees from each third-party vendor.

7) In order to use Amazon's services, a third-party vendor must assent to Amazon's Services Business Solutions Agreement. This Agreement governs every step of the sales process.

8) Once a third-party vendor has assented to the Agreement, the vendor chooses which product or products it would like to sell using Amazon's website. This choice is, with

---

[1] Amazon's website is referred to herein as "Amazon.com," while references herein to "Amazon" refer to the Defendant itself.

[2] David Streitfeld, *Amazon Is Now Second to Cross $1 Trillion Line*, N.Y. TIMES, Sept. 5, 2018, at B1.

some notable exceptions, left to the discretion of the vendor. Among the exceptions are products that Amazon determines are illegal, sexually explicit, defamatory, or obscene.

9) When the third-party vendor has chosen a product that it wants to offer on Amazon's website, the vendor provides Amazon with a description of the product, including its brand, model, dimensions, and weight. Pursuant to the Agreement, the vendor must also provide Amazon with digital images of the product, as well as other information such as shipping and handling options, product availability, in-stock status, and any other information reasonably requested by Amazon.

10) Based on this information, Amazon formats the product's listing on its website. This function, too, is provided for in the Agreement, by which Amazon retains the right in its sole discretion to determine the content, appearance, design, functionality, and all other aspects of the Services, including by redesigning, modifying, removing, or restricting access to any of them. In fact, the Agreement grants Amazon a royalty-free, non-exclusive, worldwide, perpetual, irrevocable right and license to commercially or non-commercially exploit in any manner, the information provided by third-party vendors.

11) The third-party vendor can then choose which, if any, of Amazon's other services it will use in conjunction with listing its product on Amazon's website. For example, Amazon offers "Amazon Clicks," an advertising service in which Amazon highlights and promotes the vendor's product to customers. Amazon also offers a "Fulfillment by Amazon" service, in which it takes physical possession of third-party vendors' products and ships those products to consumers. Otherwise, the vendor itself is responsible for shipping products directly to consumers.

12) The listed price for the product is chosen by the third-party vendor, subject to one exception: Vendors may not charge more on Amazon than they charge in other sales channels. Nor, according to the Agreement, may third-party vendors offer inferior customer service or

provide lower quality information about products than in other sales channels. To the extent that third-party vendors need to communicate with customers regarding their orders on Amazon, they must do so through the Amazon platform.

13) With these preliminaries completed, Amazon lists the product online and sales begin. As customers make purchases on Amazon's website, Amazon collects payment and delivers order information to the third-party vendor. At checkout, the customer can choose any shipping method offered by the third-party vendor, and any promises made by the vendor with respect to shipping date must be met. Amazon ensures compliance with this obligation by requiring the vendor to send Amazon shipping information for each order. In addition, vendors have a powerful interest in providing quality products and ensuring timely delivery, as Amazon allows shoppers to publicly rate the vendors and their products.

14) In exchange for its role in the transaction, Amazon collects two types of fees: one is a commission, typically between seven and fifteen percent of the overall sales price; the other is either a per-item or monthly fee, depending on the third-party vendor's preference. At least once every two weeks, Amazon remits all sales proceeds, minus fees, to the vendor. Pursuant to the Agreement, Amazon is classified as the third-party vendor's "agent for purposes of processing payments, refunds, and adjustments . . . receiving and holding Sales Proceeds on your behalf, remitting Sales Proceeds to Your Bank Account, charging your Credit Card, and paying Amazon and its Affiliates amounts you owe . . ."

15) Throughout each step of the sales process, Amazon may at any time cease providing any or all of the Services at its sole discretion and without notice, including suspending, prohibiting, or removing any listing. Amazon also retains other important privileges. For example, Amazon can require vendors to stop or cancel orders of any product. If Amazon determines that a vendor's actions or performance may result in risks to Amazon or third parties, it may in its sole discretion withhold any payments to the vendor.

Furthermore, Amazon requires that its vendors release it and agree to indemnify, defend, and hold it harmless against any claim, loss, damage, settlement, cost, expense, or other liability.

### Plaintiff's Film Series: "*La Historia de los Mundiales*"

16) Mr. Jorge Rossi, Plaintiff's principal, has 52 years of experience in the entertainment industry and is the creator and producer of "*La Historia de los Mundiales*," a world-renown series of audiovisual works dedicated to the FIFA[3] World Cup (the "Series").

17) More specifically, the series is a compilation of 57 hours or episodes of films covering each FIFA World Cup soccer match held from 1930, when the World Cup first began, to the present, and is considered to be the most complete documentary of its kind available today.

18) In addition to covering each FIFA World Cup soccer match, the Series also contains segments featuring many world-renown soccer stars such as Pele, Zico, Ronaldo, Maradona, Eusebio, Luis Hernandez, and Hugo Sanchez.

19) *La Historia de los Mundiales* was registered as a motion picture on April 13, 2001 with the Copyright Office, Library of Congress (Copyright Registration Number PAu002562180). As such, the Series is entitled to copyright protection under the Copyright Act, Title 17, United States Code.

20) Plaintiff is the exclusive licensee of internationally registered trademarks, including "*La Historia de los Mundiales*", service marks, logos, and derivations thereof (collectively, the "Trademark(s)") registered by its principal, Mr. Jorge Rossi, and has the exclusive right and full power to, among other things: (1) promote the brand through

---

[3] Fédération Internationale de Football Association

marketing, promotional, and sales efforts; and (2) prosecute infringers of the Trademarks and those unfairly competing with the Trademarks.

21) Namely, Mr. Jorge Rossi registered the trademark "*La Historia de los Mundiales*" with the Mexican Institute of Industrial Property on December 11, 2001 under Registration No. 734972 and on October 21, 2020 under Registration Number 2161011.[4]

22) Mr. Rossi also registered the trademark "*La Historia De Los Mundiales*" on July 25, 2012 with the Argentine Institute of Industrial Property under Registration Numbers 2516990, 2516992, 2516993, 2516994, 2516989, and 2516991 following a failed opposition to registration attempted by FIFA.[5]

23) Mr. Rossi has granted Plaintiff the exclusive right in the United States and elsewhere to use and license the Trademark in connection with the Series.

24) An application by Mr. Rossi to register the Trademark, under Section 44(e) of the Lanham Act, is also on file on the Principal Register at the U.S. Patent and Trademark Office under Serial Number 90587147.

25) The registered Trademark constitutes prima facie evidence of its validity and conclusive evidence of Plaintiff's exclusive right to use the Trademark in connection with the goods identified therein and other commercial goods and services.

26) The Trademark serves to identify the source, origin, and sponsorship of the Series, and to distinguish the goods and services offered by Plaintiff from other businesses.

---

[4] A true and correct translated copy of this registration is attached hereto as Exhibit "A."

[5] Attached hereto as Exhibit "B" is a copy of the judgment entered by the Argentine Institute of Industrial Property in favor of Mr. Rossi allowing the trademarks to be registered over the opposition of FIFA.

27) Mr. Rossi has utilized the Trademark in connection with the goods identified therein and other commercial goods and services in interstate commerce within the United States since at least as early as 2001.

28) From 2002 through 2020, the Series has been broadcasted continuously by Fox Sports International in Latin America and the United States.

29) Plaintiff has extensively advertised and promoted the Series, within the United States and abroad, that is being marketed under the Trademark. In fact, between the years 2001 and 2020, Plaintiff expended approximately over One Million Dollars ($1,000,000 USD) to market the Series in the United States and has generated over Ten Million Dollars ($10,000,000 USD) in sales. As a result of such advertising and promotional efforts, and the amount of money spent in connection therewith, the products and services offered under the Trademark have established demand and goodwill among consumers. The public has come to know and recognize the Trademark and associate the Trademark exclusively with the Series.

30) Every four years, when a new World Cup match is held, Plaintiff thereafter creates a new volume for the Series, thereby renewing its presence in the market.

31) For the World Cup scheduled to be held in Qatar in 2022, the Series will debut a new volume with audiovisual segments of the most exciting and consequential "goals" made by teams from all over the world.

32) Indeed, while soccer (or "football") continues to dominate as the most popular sport in the world, the popularity of soccer, both in terms of participation and interest, is increasing exponentially in the United States.

33) As the 2022 World Cup in Qatar approaches, and as a result of the tragic death soccer super-star Diego Maradona, the existing volumes in the Series have been gaining significant attention.

## Amazon's Illicit Conduct

34) Amazon has used and continues to use Plaintiff's Trademarks in listings on Amazon.com and in advertisements on the web without authorization from Plaintiff.

35) Moreover, several episodes from the Series are available for sale through listings that continue to remain active on Amazon's platform, despite the fact there are no copies of said film in stock.[6]

36) These "empty listings" cause consumers to incorrectly believe authorized volumes from the Series are available for sale. By maintaining these "empty listings," despite the fact that these volumes are no longer available for sale, Amazon initially captures the interest of potential purchasers and then suggest other similar competitive products for purchase; thereby diverting consumer interest from the Series to competitors.

37) In other words, Amazon can unfairly capitalize on these consumers being confused initially at the point-of click on-line, thus diverting such consumers to other competing products. Essentially, such bait and switch tactics, also known as initial interest confusion, will affect their buying decisions by allowing other competitors to get their foot in door.[7]

38) Furthermore, Amazon purchased advertisements with search engine providers, including Google, which produces listings for searches for "La Historia de los Mundiales" and "La Historia de los Mundiales de Futbol." Yet, when the search listing for Amazon is clicked on, it takes the potential customer to the Amazon.com site to a page that does not have any product listings available.

---

[6] See, e.g., https://www.amazon.com/DOCUMENTAL-HISTORIA-LOS-MUNDIALES-1930/dp/B000ISRF4S/ref=sr_1_14?dchild=1&keywords=La+Historia+De+Los+Mundiales+De+Futbol&qid=1601231859&s=movies-tv&sr=1-14.

[7] *See* 3 McCarthy, *supra* note 7, § 23:6 at 23-26 (comparing initial interest confusion to a jobseeker who misrepresents his educational background on his resume to obtain an interview; the misrepresentation causes competitive damage by giving the jobseeker "a clear advantage over others with the same background who honestly stated their educational achievements on their resumes.").

39) In addition, when a potential customer types the words "La Historia de los Mundiales" on the Amazon.com platform, a drop-down screen appears offering suggested search terms that include the "La Historia de los Mundiales" trademark. When a customer clicks on one of the suggested search terms, products are offered for sale. However, none of the products offered are of the Series.

40) Plaintiff has not granted Amazon, and Amazon has no right to use, the "La Historia de los Mundiales" trademark on its website or to advertise it for sale, especially since Amazon has very few if any authentic copies of the Series for sale on its website.

41) Amazon, by falsely advertising that the Series is available for purchase on its website, by maintaining suggested search terms on its website that include the "La Historia de los Mundiales" trademark, and by maintaining empty listings, Amazon capitalizes on the goodwill of Plaintiff's product and trademark in order to "bait" prospective customers searching specifically for the Series to Amazon.com, where Amazon can then "switch" the product falsely being advertised for sale to other products marketed and sold by Amazon. This is a classic bait and switch case.

42) To make matters worse, Amazon has permitted counterfeit copies of the Series to be sold through Amazon.com for at least 14 years (the "Unlicensed Works"). The sale of the Unlicensed Works has not been authorized, at any time, by the Copyright owner, its agent, or under applicable law.

43) Negative reviews have been made on Amazon.com by customers purchasing Unlicensed Works and/or defective copies of the Series.

44) On both November 13, 2020 and on January 13, 2021, Plaintiff sent letters to Amazon requesting that Amazon take corrective action. [8]

---

[8] A copy of the letters are attached hereto as Composite Exhibit "C."

45) Amazon has ignored Plaintiff's attempts to amicably resolve these issues without the need of costly and time-consuming litigation and has forced Plaintiff to see relief in the form of this Complaint.

46) Plaintiff has retained the undersigned law firm and agreed to pay reasonable attorney's fees and costs incurred in connection with this litigation.

## CAUSES OF ACTION

### COUNT I – TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

47) Plaintiff incorporates by reference, re-alleges, and adopts paragraphs 1 through 46 of this Complaint as if fully stated herein.

48) Plaintiff is the current, active, and exclusive owner of the Unlicensed Works' valid and legally protected trademark, trade dress, and copyright. The trademark is active, valid, and has not been revoked or cancelled.

49) Amazon has used, and is continuing to use, Plaintiff's trademark in commerce without consent, and Amazon's use is likely to deceive, cause confusion, or result in mistake as to the affiliation, connection, or association of Amazon with Plaintiff's trademarked works.

50) Amazon's unauthorized use of the *La Historia de los Mundiales* trademark has damaged and materially diminished the value of Plaintiff's trademark rights, and interfered with Plaintiff's existing and potential business relations.

51) Amazon's unauthorized use of the Unlicensed Works has infringed upon Plaintiff's trademark and trade name rights, in violation of 15 U.S.C. §§1114 and 1125(a).

52) As a result of Amazon's conduct, Plaintiff has suffered damages that include but are not limited to lost sales of its product, trademark infringement and dilution, and damage to Plaintiffs' existing and potential business relations, together with the cause of this action.

53) In addition, pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to an award of attorneys' fees since Amazon's acts are willful, intentional, and egregious.

### COUNT II – UNFAIR COMPETITION BASED ON FALSE REPRESENTATIONS

54) Plaintiff incorporates by reference, re-alleges, and adopts paragraphs 1 through 46 of this Complaint, as if fully stated herein.

55) Amazon has without authorization, or in connection with the promotion and sale of its goods in interstate commerce, made or contributed to the making of representations of fact that are false and misleading which are likely to cause confusion, or to cause mistake, or to deceive purchasers and potential purchasers into believing that Plaintiff's product is available for purchase from Amazon on Amazon.com.

56) Amazon's acts constitute unfair competition and are misleading representations of fact.

57) Upon information and belief, Amazon's acts of unfair competition and misrepresentations have led to, among other things, initial interest confusion in customers stemming from Amazon's "bait and switch" practices.

58) Upon information and belief, Amazon's acts of unfair competition and misrepresentations have deceived and, unless restrained, will continue to deceive the public, including consumers and retailers, and have injured and unless constrained will continue to injure Plaintiffs and the public, including consumers and retailers, causing damages to Plaintiffs in an amount to be determined at trial and other irreparable injury to the goodwill and reputation of Plaintiff and its product.

59) Upon information and belief, Amazon's acts of unfair competition are willful, intentional and egregious and make this an exceptional case within the meaning of 15. U.S.C. §1117(a), entitling Plaintiff to attorney's fees.

60) Plaintiff has no adequate remedy at law to compensate them for all the damages the Amazon's wrongful acts have and will cause.

### COUNT III – UNJUST ENRICHMENT

61) Plaintiff incorporates by reference, re-alleges, and adopts paragraphs 1 through 46 of this Complaint as if fully stated herein.

62) Amazon has benefitted from the use of Plaintiff's name, reputation, and goodwill without compensating the Plaintiff.

63) Amazon's conduct, directly or through an agent or affiliate, constitutes unjust enrichment to the Amazon.

64) By virtue of Amazon's unjust enrichment, Plaintiff has suffered money damages attributed to, but not limited to, loss of sales revenue, loss of future sales, loss of Plaintiff's business goodwill, and dilution of Plaintiff's trademark rights.

### COUNT IV – INJUNCTIVE RELIEF

65) Plaintiff incorporates by reference, re-alleges, and adopts paragraphs 1 through 46 of this Complaint as if fully stated herein.

66) Amazon has engaged in deceptive trade practices in violation of the Lanham Act.

67) Amazon's acts will continue to deceive the public, including consumers and retailers, unless the Court enjoins Amazon from advertising, marketing, or purporting to sell The Series.

### COUNT V – DECLARATORY RELIEF

68) Plaintiff incorporates by reference, re-alleges, and adopts paragraphs 1 through 46 of this Complaint as if fully stated herein.

69) Based on the allegations contained in this Complaint, there is a present and actual need for a judicial declaration.

70) Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs are entitled to and hereby move the Court for a judgment declaring that:

a. Amazon's advertising is illegal, confusing, likely to confuse or otherwise misleading;

b. Plaintiff has a legally protectable interest in preventing Amazon's advertising;

c. Plaintiff has suffered real harm as a result of Amazon's advertising.

d. Amazon's advertising is likely to confuse the public into believing that the Amazon is authorized to sell The Series and/or that the public may in fact order The Series through Amazon's website; and

e. Amazon should pay Plaintiff their attorney fees and costs incurred in prosecuting this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant, AMAZON.COM, INC. for:

I. A permanent injunction against Amazon, its officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, enjoining and restraining them from directly or indirectly:

a. Advertising, marketing, or offering to sell The Series in any source, including any internet search engine provider, or in any manner on Amazon's website; or

b. Publishing, displaying, distributing, disseminating, or using, or permitting or entering into or performing any agreement for the publication, display, distribution, or use of Plaintiff's trademarked works.

II. An order requiring Amazon to immediately remove, or cause to be removed, all advertisements that purport to or imply that Amazon is authorized to sell The Series on its website;

III. All recoverable compensatory, statutory, and other damages sustained by Plaintiff;

IV. both pre-judgment and post-judgment interest on any amounts awarded;

V. judgment awarding Amazon's profits resulting from the illegal sale of the Series on Amazon's website;

VI. attorneys' fees, costs, and expenses, as permitted under applicable law;

VII. treble and/or punitive damages as may be allowable under applicable law;

IIX. injunctive relief as requested;

IX. declaratory relief as requested; and

X. such other relief as the Court may deem be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable, and a trial pursuant to Rule 39(c), Federal Rules of Civil Procedure, as to all matters not triable as of right by a jury to the extent permitted by law.

Dated:  April 23, 2021
Miami, FL

*Respectfully submitted,*

**HIRZEL DREYFUSS & DEMPSEY, PLLC**
*Counsel for Plaintiff*
2333 Brickell Avenue, Suite A-1
Miami, Florida 33129
Telephone: (305) 615-1617
Facsimile:  (305) 615-1585

By: /s/
  **LEON F. HIRZEL**
  Florida Bar No.: 085966
  Email: hirzel@hddlawfirm.com
  **PATRICK G. DEMPSEY**
  Florida Bar No.: 27676
  Email: dempsey@hddlawfirm.com